## ROBBINS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1922.)

No. 5705.

1. **Woods and forests ☞8—Secretary of Interior held authorized to make regulations governing use of public highway within boundaries designated for national park.**

Under Act Jan. 26, 1915 (Comp. St. § 5249a et seq.), establishing the Rocky Mountain National Park, to consist of the land within certain boundaries, excepting under section 2 "any valid existing claim, location or entry under the land laws of the United States" for right of way purposes, and under section 3 lands "held in private, municipal or state ownership," and in section 4, vesting the exclusive control of the park in the Secretary of the Interior, with the duty to make regulations for the care, protection, and management of a park, including provisions for the use of automobiles therein, and Act Feb. 14, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5249aa), increasing the boundaries, and Act Aug. 25. 1916 (Comp. St. § 787d), creating the National Park Service in the Interior Department, under the charge of a director, with the duty to make and publish regulations, *held* to empower the Secretary of the Interior to make regulations concerning the use of automobiles over public highways within the designated boundaries within the state of Colorado, where the state highway commission of the state of Colorado had transferred the control, management, maintenance, and supervision of such highways to the United States government under Rev. St. Colo. 1908, §§ 1204, 6900, 6901, and under Acts Colo. 1917, p. 254, art. 2, § 5.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. United States ⟨key⟩3—States may cede jurisdiction over lands to federal government and acceptance presumed.**

A state has jurisdiction over all the territory within its borders not reserved in the act of admission, but it may by legislative enactment effectively cede jurisdiction over lands to the federal Government for its purposes, in which case the acceptance of jurisdiction by the federal government will be presumed.

**3. Woods and forests ⟨key⟩8—Regulations adopted by Secretary of the Interior regulating traffic on highways in national park held authorized by the Constitution.**

Regulations adopted by the Secretary of the Interior of traffic on highways within Rocky Mountain National Park, under Act Jan. 26, 1915 (Comp. St. § 5249a et seq.), and Act Aug. 25, 1916 (Comp. St. § 787d), *held* authorized by Const. art. 4, § 3, entitling the government to make all needful regulations respecting its territory and property.

**4. Woods and forests ⟨key⟩8—Regulations of Department of the Interior held to prohibit transportation of passengers for hire within national park without written permission from Director of National Park Service.**

Regulations promulgated by the Department of Interior under Act Jan. 26, 1915 (Comp. St. § 5249a et seq.), and Act Aug. 25, 1916 (Comp. St. § 787d), providing that no person will be permitted to engage in business within the Rocky Mountain National Park without written permission from the Director of the National Park Service, and excluding from the park automobiles carrying passengers paying directly or indirectly for the use of the machine, excepting automobiles used by transportation lines operating under government franchise, *held* to prohibit a person from transporting in his automobile passengers for hire within the park without written permission from the Director of the National Park Service.

**5. Woods and forests ⟨key⟩8—Regulations of Department of the Interior prohibiting transportation of passengers for hire within national park without written consent from Director of National Park Service held not unreasonable.**

Regulations promulgated by the Department of the Interior under Act Jan. 26, 1915 (Comp. St. § 5249a et seq.), and Act Aug. 25, 1916 (Comp. St. § 787d), prohibiting a person from transporting passengers for hire within the Rocky Mountain National Park without written permission from the Director of National Park Service *held* not unreasonable.

**6. Injunction ⟨key⟩102—Government entitled to restrain violation of regulations as to traffic on highways in national park.**

The United States *held* entitled to injunction restraining a person from transporting passengers for hire in the Rocky Mountain National Park without permission from the Director of National Park Service, in violation of regulations promulgated by the Department of Interior under Act Cong. Jan. 26, 1915 (Comp. St. § 5249a et seq.), and Act Aug. 25, 1916 (Comp. St. § 787d), as against the contention that no property right was involved and the object of the suit was to obtain an injunction against a threatened offense, since the national policy of protecting the public traveling within the park was involved; an injunction being the proper remedy in such case.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit by the United States against Charles Robbins. Decree for plaintiff, and defendant appeals. Affirmed.

This is an appeal from a decree in favor of the United States, as plaintiff, enjoining the appellant, defendant below, and his agents, from transporting passengers for hire in the Rocky Mountain National Park, in Colorado, without written permission from the Director of the National Park Service.

The bill avers that the park was established by virtue of the Act of Congress of January 26, 1915 (38 Stat. 798 [Comp. St. § 5249a]), and that certain

lands were added and held subject thereto by the Act of February 14, 1917 (39 Stat. 916 [Comp. St. 1918, Comp. St. Ann. Supp. 1918, § 5249aa]); that the National Park Service was established by the Act of August 25, 1916 (39 Stat. 535 [Comp. St. § 787d]), whereby the said director had the supervision and control of the several national parks, under the direction of the Secretary of the Interior, and that certain regulations for the government of this park were established and published by the Secretary and in effect, on March 1, 1919, as follows:

"6. *Private Operations.*—No person will be permitted to reside permanently, engage in any business, operate a moving picture camera, or erect buildings upon the government lands in the park without permission in writing from the Director of the National Park Service, Washington, D. C. Applications for such permission may be addressed to the director or to the superintendent of the park."

"18. *Fines and Penalties.*—Persons who render themselves obnoxious by disorderly conduct or bad behavior will be subjected to the punishment hereinafter prescribed for violation of the foregoing regulations, or they may be summarily removed from the park by the superintendent and not allowed to return without permission in writing from the Director of the National Park Service or the superintendent of the park.

"Any person who violates any of the foregoing regulations shall be deemed guilty of a misdemeanor, and shall be fined not more than $500 or imprisoned not more than one year, or both."

The bill then charges that on July 2, 1920, Ranger McDaniel notified the defendant that, by engaging in the business of carrying passengers by automobiles for hire in the park without written permission from the director, he was violating regulation 6, but he engaged therein, whereupon he was ejected from the park by the ranger; that he then informed the ranger he would return to the park the next day, inviting arrest, and on July 14, 1920, he again engaged in said business in violation of regulations 6 and 18, and without permission, and has wrongfully persisted therein; that he threatens, as he has openly and privately declared, to disregard the regulations and engage in said acts, and thereby he interferes with the due administration of the Park Service and frustrates the plans and policy of its creation, for the redress of which there is no adequate remedy at law.

The prayer of the bill is for a temporary and final injunction against the pursuit of such business by the defendant and his return to the park without permission of the director or superintendent.

In answer, the defendant denies the authority of the superintendent and ranger under the acts of Congress, the application to him of the regulations, and any residence or conduct of business thereby prohibited upon government lands in the park. He admits the notice from the ranger and ejection from the park, and his advice to the ranger he would return, asserting his right to travel on the public roads in the park. He admits carrying passengers for hire by automobile upon the Fall River road, denies he violated sections 6 or 18 of the regulations, and says that section 18 does not require permission from the director or superintendent to operate automobiles over any public highway established prior to January 26, 1915, and that the highways over which he traveled were established under the laws of Colorado and the Act of Congress of July 26, 1866 (14 Stat. 253). He admits he refused to desist traveling on the state highways in the park and he intends to continue without permission, which he avers would be granted only to Rocky Mountain Transportation Company, whose permit is exclusive for 20 years. He disclaims interference with the administration of the park or the plans or policy of it.

The defendant further alleges that on and before January 26, 1915, when the park was created, there were public highways in the area, some of them for 40 years over the public domain, under the authority of the act of July 26, 1866, and no highways have been constructed in the park since it was created; that the highways therein are under the exclusive sovereignty and jurisdiction of the state of Colorado, for the use and benefit of the public, and are not affected by the Park Act, according to its terms, and that the state has not ceded or relinquished its jurisdiction over the highways; that nevertheless

the Secretary of the Interior claims the regulations exclude defendant's business as a common carrier in operating automobiles for hire on the highways in the park; that the act does not confer such authority over them, and the United States is without title or interest therein, wherefore the defendant's acts are rightful, and the bill is without equity.

The defendant further alleges that the regulations, if applicable to him, are unreasonable and void, and are an unconstitutional interference with his right as a member of the public to travel on the public roads, violative of the Fifth Amendment, would deprive him of his liberty and property without due process or compensation, and that no property of the plaintiff is interfered with, and the bill seeks to enjoin a threatened offense.

The cause was heard upon the application for a temporary injunction. Counsel for plaintiff asked to amend the bill by adding regulation 2, effective March 1, 1920, which provides as follows:

"2. *Automobiles.*—The park is open to automobiles operated for pleasure, but not to those carrying passengers who are paying, either directly or indirectly, for the use of the machine (excepting, however, automobiles used by transportation lines operating under government franchise)."

There was objection by the defendant, but it was overruled, and the regulation was admitted and ordered incorporated in the complaint.

The plaintiff introduced two resolutions, one of date August 13, 1919, of the Colorado State Highway Commission, and the other of date August 7, 1919, of the board of county commissioners of Larimer county, Colo., as follows:

"Be it resolved that the State Highway Commission of the state of Colorado does hereby relinquish, release, and transfer unto the United States government, and to the department thereof having control of the National Park and the highways therein, the control, management, maintenance, and supervision now exercised by said Highway Commission of the public highways located and situated within the boundaries of Rocky Mountain National Park, in the state of Colorado, with the exception, however, of what is known and designated as the Fall River road, which is now in process of construction, and shall be completed by said State Highway Commission; and upon completion thereof, the maintenance, control and supervision of said excepted road shall pass to the United States government, as in this resolution provided.

"State Highway Commission of the State of Colorado,

"By [Signed]  E. E. Sommers, Chairman,

"[Signed]  N. A. Ballou, Secretary.

"Approved: [Signed]  Oliver H. Shoup, Governor.

"Attest: [Signed]  James R. Noland, Secretary of State.  [State Seal.]"

"Dated August 7, 1919.

"Be it resolved that the board of county commissioners of Larimer county, state of Colorado, do hereby release, relinguish, and transfer unto the United States government and to the department thereof having control of the national parks and highways therein, the control, management, maintenance, and supervision, now exercised by said board, of the public highways located and situated within the boundaries of the Rocky Mountain National Park in the state of Colorado, with the exception, however, of what is known and designated as the Fall River road, which is now in process of construction, and upon the completion thereof it shall pass to the United States government as in this respect provided.

"The Board of County Commissioners of Larimer County,

"By Harris Akin, Chairman."

Objections were made to the above and they were also overruled.

The witness McDaniels, a park ranger, testified that prior to July 13, 1920, he had seen defendant Robbins transporting passengers by automobile for hire within the park, and on that date found him engaged therein on the Fall River road, and then and there notified him that it was contrary to the rules and regulations governing the park to do so without a permit, and ordered him to leave the park and not return in such business until he had a permit; that the defendant then stated that he would return as soon as he obtained a load of passengers and without a permit, and did so return the following day.

The witness L. C. Way, superintendent of the park, testified that since the

establishment of the park, the United States had done some work on the roads in the park, made some repairs, and built some extensions of the existing roads and trails, that the Fall River road is about 15 miles long, and with the exception of about 1½ miles has been built since January 26, 1915, and (on information and belief) that the roads approaching that road and connecting it with the village of Estes Park had been constructed and in operation as established highways about 40 years. He also testified that prior to July 13, 1920, he had notified the defendant several times that by carrying passengers for hire within the park he was violating the rules and regulations, and that when first stopped on July 13, 1920, he was told by the ranger, McDaniels, not to return with passengers for hire without a permit, that Robbins then told McDaniels he would return as soon as he obtained a load and did so return the next day.

There was a stipulation that the Fall River road was laid out and established by resolution of the board of commissioners of Larimer county, Colo., declaring it to be a public highway on October 9, 1913; that the road traversed the lands of three private proprietors and the remainder was upon the public domain, that the road lacked three miles of completion, and that the outlay therefor of more than $100,000 had been furnished and expended by Larimer county and the state of Colorado, except about $3,600 expended by the government, in about 1916; that the line of the road is shown on the map (Exhibit A), and the two roads shown thereon connecting the village of Estes Park therewith were then referred to as "Highline Drive," that the witness was informed that prior to January 26, 1915, the Governor of Colorado had a verbal understanding with the representatives of the United States that the state would with reasonable diligence complete the Fall River road, and would thereupon cede it to the government, and that prior to the passage of said resolution of August 7, 1919, the county commissioners of Larimer county had agreed to place all roads within the park area in first-class order, on condition that the United States would thereafter maintain them in the like condition.

Counsel for the defendant offered to show that at a conversation held in Estes Park village, in July, 1920, between W. E. Grace, engaged in transporting passengers and goods for hire, and the defendant, likewise engaged, and Superintendent Way, Grace asked of Way if there was no method whereby he and the defendant might be given permits to operate in th park, and Way stated, in substance, "Not so long as the company (meaning the Rocky Mountain Park Transportation Company) is handling the business." Way denied such statement by him. The court rejected the offer as immaterial.

Counsel for defendant stated to the court that the contract between the Interior Department and said transportation company was in effect exclusive and monopolistic, and gave that company the sole right to operate automobiles in transporting passengers and freight for hire. The trial judge held that the fact, if shown, did not affect any right of the defendant and would be immaterial.

Counsel for defendant then stated to the court that the defendant could not get a permit if he asked for one. The trial judge ruled: "That is a matter between him and the proper officers of the government having control of the park."

Thereupon the trial judge granted a temporary injunction, and upon consent of the defendant the hearing was regarded as final, with exceptions to rulings reserved to the defendant, and a final decree was rendered in favor of the plaintiff.

Paul W. Lee, of Ft. Collins, Colo., and Forrest C. Northcutt, of Denver, Colo. (George H. Shaw, of Ft. Collins, Colo., on the brief), for appellant.

Walter F. Daly, Asst. U. S. Atty., of Denver, Colo. (Harry B. Tedrow, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and COTTERAL, District Judges.

COTTERAL, District Judge (after stating the facts as above). A primary convention of the appellant is that Congress has not asserted any proprietary control over the highways in this park, therefore the regulations if applicable to him are without legislative authority. The original act (Act Jan. 26, 1915, 38 Stat. 798) reserves and dedicates a tract within certain boundaries as the Rocky Mountain National Park. Section 2 excepts:

"Any valid existing claim, location or entry under the land laws of the United States, whether for homestead, mineral, right of way, or any other purpose whatsoever, or shall affect the rights of any such claimant, locator, or entryman to the full use and enjoyment of his land."

Section 3 also excepts lands "held in private, municipal, or state ownership." Section 4 vests the executive control of the park in the Secretary of the Interior, with a duty to make and publish such reasonable rules and regulations, not inconsistent with the laws of the United States, as he may deem "necessary or proper for the care, protection, management, and improvement of the same, * * * primarily aimed at the freest use of the said park for recreation purposes by the public and for the preservation of the natural conditions and scenic beauties thereof," the regulations to include provisions for the use of automobiles therein.

The Act of August 25, 1916 (39 Stat. 535) creates the National Park Service in the Interior Department, under the charge of a director, appointed by the Secretary of the Interior. His duty is to make and publish regulations, and infractions of them are made punishable. By the Act of February 14, 1917 (39 Stat. 916) other lands were added to the park, and the provisions of the act of 1915 were made applicable to them.

[1] The highways in the park fall within the physical boundaries of the lands from which it was created, and naturally became subject to federal control unless excluded by section 2 or 3 of the act of 1915, or by prior authority of the state of Colorado. Considering the necessity and utility of the highways for the use of the public in visiting the park, it seems obvious that control over them by the federal government was contemplated by Congress, and especially since section 4 requires the regulations to provide for the use of automobiles, and the exceptions contained in sections 2 and 3 of the act of 1915, apparently, from the terms employed, were not meant to refer to public highways.

But it is insisted that the intention to except them is shown by the reference to "a right of way under the land laws," and by "lands held in municipal or state ownership"; that section 2477, Rev. Stat., enacted in 1866 (Comp. St. § 4919), granted the highways to the public; and that as a result the control of them was vested in the state of Colorado. We may assume the state had such control, without so deciding, and the inquiry arises whether the government has acquired it from the state.

[2] A state has jurisdiction over all the territory within its borders not reserved in the act of admission. Van Brocklin v. Anderson, 117 U. S. 151, 6 Sup. Ct. 670, 29 L. Ed. 845. But it may by legislative

enactment effectively cede jurisdiction over lands to the government for its purposes, and the acceptance by it will then be presumed. Ft. Leavenworth R. Co. v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. Ed. 264.

It appears by the laws of Colorado, found in chapter 78, art. 2, § 5, Acts of 1917, the State Highway Commission was given power to make agreements in behalf of the state with the government, in any manner affecting the public highways of the state, and further by the Revised Statutes of Colorado 1908, §§ 6900, 6901, the consent of the state was given to the United States to acquire any land in the state for any purpose of the government. The state laws also authorized a board of county commissioners to lay out, alter, or discontinue any road running into or through any county, to represent the county and have care of the county property, and the management of its business and concerns. Rev. Stat. Colo. 1908, § 1204. The resolution of the State Highway Commission, sanctioned by the county board of Larimer county, was sufficient to cede or transfer through legislative agency, to the government, such jurisdiction and control as the state possessed over the highways in this park as therein described.

The noncompletion of the Fall River road is emphasized, as the resolutions withheld transfer of it meantime. The purpose was manifest that it should pass to the government except that temporarily the state was left free to improve it. However this may be, it seems but a mere incident that the appellant was found on this road, for, doubtless, in order to carry passengers there, the use of other roads by him was necessary, in every instance, and inseparable. To exclude him from other roads would practically bar his use of the Fall River road. It would not aid him or be of any consequence to except that road from the injunction.

[3] But we are of the opinion that the power of the government to regulate the traffic on those highways, as it has done by congressional enactment and rules thereby authorized, rests on the secure footing that it is a valid exercise of control over the property of the government, even though it is of the nature of police power, and that it is sustained by section 3, art. 4, of the federal Constitution, which entitles the government to make all needful regulations respecting its territory and property.

Neither grants of rights of way on the public lands, accepted by user or statute, nor state ownership of highways derived from the government or otherwise effect any abdication of such constitutional authority. Both the power of Congress to grant easements in favor of the public for travel and transportation and its power to legislate concerning territory and property are and must be consistently exercised, and the latter is accomplished by regulations to the end of devoting the adjacent domain owned by the government to the lawful purposes and objects for which a national park is granted. We therefore hold that the regulations here involved cannot be successfully assailed because of interference with private right to use the highways in the Rocky Mountain National Park. Camfield v. U. S., 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260; U. S. v. Gettysburg, 160 U. S. 668,

16 Sup. Ct. 427, 40 L. Ed. 576; Kansas v. Colorado, 206 U. S. 46, 27 Sup. Ct. 655, 51 L. Ed. 956; Light v. U. S., 220 U. S. 523, 31 Sup. Ct. 485, 55 L. Ed. 570; Curtin v. Benson, 222 U. S. 78, 32 Sup. Ct. 31, 56 L. Ed. 102; Utah Power & Light Co. v. U. S., 243 U. S. 389, 37 Sup. Ct. 387, 61 L. Ed. 791.

[4] It is claimed that the regulations do not apply to the defendant in the transportation of passengers. But we think this is a mistake and that sections 6 and 2, heretofore set forth, forbid the transportation by appellant of passengers for hire in the park, without permission or franchise.

[5] Another contention of appellant is that the regulations are unreasonable and void, chiefly because they have been and will only be utilized to confer a monopolistic permit on a certain company. The testimony offered to the effect that a permit would be denied appellant must be regarded as inadmissible, for the reason that no application was made for the purpose, and that he declined to recognize the regulations. Utah Power & Light Co. v. U. S., 243 U. S. 389, 37 Sup. Ct. 387, 61 L. Ed. 791. Certainly the duty was imposed upon the Secretary to regulate the traffic on the highway in a manner that would best promote the safety and accommodation of the public, and it was competent, if deemed necessary or prudent, to limit the franchise to one approved carrier. This might be called for by the conditions obtaining at the park. Before a regulation can be regarded as invalid, it must appear that the Secretary has exceeded his authority. But not so of such as are thought merely to be illiberal or not conducive to the best results. Utah Power & Light Co. v. U. S., supra. By this test, we hold the regulations complained of to be reasonable and valid.

[6] Finally, it is urged that the bill of complaint is without equity because no property right is involved and the object of the suit is to obtain an injunction against a threatened offense. From what has been said it is clear the government has important property rights in this park, but in any event its national policy is involved of protecting the public in traveling within the park, and in such a case, injunction is the proper remedy. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092.

Our conclusion is that the decree of the District Court is right, and it is accordingly affirmed.