**STATE ex SCHNEIDER v SCHRIMPER DAIRY CO.**

Common Pleas Court, Hamilton Co

Decided November 27, 1934

John W. Bricker, attorney geenral, Charles G. Williams, asst. attorney general, Columbus, for plaintiff.

Kunkel & Kunkel, Cincinnati, amici curiae.

Orris E. Hamilton, Cincinnati, for defendant.

## OPINION

By MACK, J.

By the act approved June 22, 1933, (115 Ohio Laws 288) entitled—

"An act to regulate the distribution of fluid milk or cream and for this purpose to create the Ohio Milk Marketing Commission and to define its powers and duties, and to declare an emergency," the state of Ohio created a milk marketing commission with powers set forth in detail in said act. Among such powers was that of supervising and regulating the entire milk industry in this state; designating any area of the state as a natural marketing area; adopting and enforcing the rules, regulations and orders to carry out the provisions of the act, including governing the method of determining the proportion of the lacteal secretion of the herd of a producer which shall be accepted and paid for pursuant to such prices as may be established by the commission, etc.

The intent and purpose of the act is elaborately set forth in Section 2 as follows:

"The production, processing, distribution and sale of milk in this state as a whole, and each of said activities or operations, separately, is hereby declared to be a **business charged with a public interest.** The reason therefor lies in the following facts:

"Milk under present conditions is a necessary article of human food for which there is no adequate substitute. The procurement and maintenance of an adequate supply of milk, of proper chemical and physical content, and free from contamination or source of infection, is vital to the public health.

"Under the social conditions obtaining in this state, the needs of a great majority of the people for milk cannot be satisfied excepting through a system of distribution which can effectively bridge the gap between the producer and the ultimate consumer.

"Sanitary regulations and standards of content and purity adopted by health authorities, however effectively enforced, have been found in actual experience in this state in sufficient in and of themselves to insure such control of the system of marketing milk as to safeguard the consuming public and the persons engaged in the milk industry in its various branches against evils which threaten the economic integrity of the industry and tend to undermine such health regulations and standards themselves. Such evils consist of unfair, unjust, destructive and demoralizing trade practices, which have been and are now being carried on in the production, sale and distribution of milk. The conditions resulting therefrom constitute a menace to the health and welfare of the inhabitants of this state. * * *

"As a result of this policy the normal process of marketing milk has come to be a co-operative enterprise which ought to be safeguarded and protected by social control. It is the intent and purpose of this act more effectually to promote the settled policy of this state as so established, as far as the marketing of milk is concerned, and to provide an effective means of social control to that end."

After due references to the act and the regulations and actions thereunder by the milk commission (copies of which are attached to the petition) with reference to the marketing area in this district, wherein defendant is engaged in the operation of a dairy as a "milk dealer", it is alleged in the petition that defendant is violating the provisions of the act and the orders and regulations of such milk commission in the following particulars, viz.—

First: In failing to obtain a license as required by the act;

Second: In failing to deduct three cents per cwt. from the producers supplying milk to him and paying the same to the control committee as provided;

Third: In failing to pay his producers for milk purchased from them.

It is alleged in the petition:

"Plaintiff says that criminal action will not and does not afford a proper and adequate remedy and relief to plaintiff; that said defendant has been cited before the grievance committee of the Cincinnati Market Sales Area and has failed to comply with the law after said citation.

"Plaintiff says there is no other adequate remedy at law than the intervention of the court of equity which is absolutely necessary if the provisions of the act are to be accomplished and the Ohio Milk Marketing Commission successfully functions; that unless restrained, the defendant will continue his illegal practices; that a restraining order is imperative in order to preserve the law and to permit the state officials to perform their proper functions under the law and to prevent irreparable injury to those engaged in said business, who are obeying the law, and to prevent irreparable injury to the producers from which the defendant is purchasing."

In the prayer for relief it is asked that defendant be restrained from distributing, selling or marketing milk or cream in the Cincinnati market sales area, or operating as a milk dealer in said market, and for the appointment of a receiver, and for all other proper relief.

To such petition defendant (thereby admitting the truth of all the well

pleaded allegations thereof) demurs upon two grounds, viz:

1. There is a misjoinder of parties plaintiff.

2. The facts set out in the petition do not state a cause of action.

In the argument and briefs no claim is urged concerning the constitutionality or validity of the legislation in question, nor of the regulations or orders of the milk commission. Doubtless this is on account of the decisions of the Supreme Court of the United States upholding the constitutionality and validity of similar legislation in the state of New York. Nebbia v New York, 291 U. S. 502. Hogeman Farms Corporation v Baldwin et, decided November 5, 1934.

As to the first ground of demurrer, it is sufficient to say that technically the action should have been brought either by the state of Ohio or by the Ohio Milk Marketing Commission on the relation of the prosecuting attorney. In either event the action would be one to assert alleged sovereign rights of the state, and it does not seem to the court that there are two separate parties who are misjoined simply because in addition to the state of Ohio there is named the milk marketing commission, one of its departments or commissions.

Said first ground of the demurrer is therefore untenable in the opinion of the court.

As to the second ground of demurrer, it is claimed that by Section 6 of the act [§1080-6 GC] the legislature has provided that a failure to obtain a license, or failure to obey any lawful rule or order of the commission shall be a misdemeanor punishable by fine or imprisonment or both, and that therefore the remedy of the state is restricted to a criminal proceeding and that it cannot resort to the equitable powers of this court. Said Section reads as follows:

"Whoever, being a milk dealer, as defined in this act, engages in business in any manner as such, except as provided in sub-section (a) of Section 5, without being licensed as provided in this act, or wilfully makes any false statements in his application for a license, filed pursuant to this act, or wilfully disobeys or fails to observe or comply with any lawful rule or order of the commission, prescribed under the provisions of this act, shall be guilty of a misdemeanor and upon conviction therof shall be fined not more than one hundred dollars or imprisoned not to exceed six months, or both. Each day on which such milk dealer engages in business without being so licensed shall be deemed a separate offense."

In support of such second ground of demurrer there is cited on behalf of defendant **Commissioners v Bank, 32 Oh St 194,** and **State ex Reynolds v Capital City Dairy Co., 62 Oh St 123.**

Commissioners v Bank was a case where it was claimed that a county treasurer had unlawfully and by conspiracy with others removed money from the county treasury, depositing the same in a bank. Thereafter the county treasurer became a defaulter and absconded and a suit was brought by the county commissioners against the bank and two individuals to recover the amount so removed from the county treasury. A demurrer to the petition was sustained and such ruling affirmed. The court in its opinion points out that the statute expressly created a new offense and provided a specific remedy against such new offense not antecedently unlawful. In that case the statute provided for prosecution by indictment of the persons so participating in the unlawful act of the county treasurer, and provided that such persons, in addition to punishment by imprisonment in the penitentiary, be fined an amount equal to double the amount of the money so embezzled, and which fine shall operate as a judgment at law on all the estate of such party so convicted and shall be enforced by execution, etc. In view of such specific provision, the court held an action at law to recover a judgment without taking the proceedings specified could not be maintained.

State ex Reynolds v Capital City Dairy Co. was an action in mandatory injunction at the suit of an inspector employed by the dairy and food commissioner to compel a manufacturer to furnish for analysis samples of oleo margarine. The opinion points out that no civil remedy is anywhere given by the statute, and concludes that the legislature in. that particular case deemed the penalties imposed an adequate remedy for a violation of the statutory provisions with reference to said subject. It is said:

"As the statute which creates the duty and obligation to furnish for analysis samples of articles manufactured and sold for food, has provided no other remedy for a failure to perform that duty, except a prosecution for the enforcement of the penalties it has prescribed, that must be regarded as the exclusive remedy therefor."

In this state our Supreme Court has in two instances granted the high writ of quo warranto in cases where corporations were doing acts which by statute were made offenses for which specific punishment was prescribed.

The first case is that of **State ex Attorney General v Capital City Dairy Co., 62 Oh St 350.** It was urged in that case that the remedy of the state against violation of the pure food statutes was by criminal prosecution. In answer thereto the court said, per Spear, J., at page 366:

"It is enough to say of this objection that the remedy is not adequate. The object of the statute is **to protect the public.** In the nature of things, a small fine is not a sufficient deterrent to accomplish the desired end, especially in the case of a company possessed of ample means and conducting a large business."

The second case of quo warranto where a criminal punishment provided for the acts of a corporation is **State ex Attorney General v Jockey Club, 114 Oh St 582,** wherein the court held that judgment of ouster would be awarded against a corporation permitting betting on races, although such acts were punishable by criminal statutes. The court at pages 598 and 599 cites with approval the last mentioned case.

The general rule applicable to actions similar to the instant case is well stated in High on Injunctions, 4th Ed., §20a, as follows:

"It must constantly be borne in mind, however, that the rule forbidding interference by equity to restrain the commission of crimes is limited strictly to cases where the acts sought to be enjoined are unaccompanied by any injury to property rights and where the granting of the relief would, therefore, be, in effect, the enforcement by courts of equity of the penal laws of the state. And where the acts against which the relief is prayed are such as to cause irreparable damage to property or property rights, **or the case is one which for any other reason calls for the interposition of equity according to established principles,** the mere fact that such acts are also criminal in their nature and punishable under the penal laws of the state constitutes no valid defense to the interference of the court by injunction. In such case property rights are being violated and it is for their protection that it is the duty of the court to interfere and the wrong-doer will not be permitted to shield himself from the strong arm of equity by pleading the criminal nature of the wrongs in which he is engaged."

In a well considered discussion of cases in American Law Reporter, 1145, it is well said at page 1147:

"The principle underlying the cases is that the government might enjoin certain. acts which amount to a crime or a violation of the criminal statutes, not because the act complained of is a crime, but in spite of the fact that it is a crime."

Our Supreme Court in the case of **Renner Brewing Company v Rolland, 96 Oh St 432,** laid down the rule which, in the opinion of this court, is applicable to the case at bar, and especially in view of the allegations of the petition hereinbefore recited. In that case the statute of Ohio provides a penalty for using bottles with the trade mark or name of the owner blown or embossed upon each bottle. Notwithstanding such criminal statute the court granted an injunction against another person trafficking in such bottles of the plaintiff. Syllabus 2 is as follows:

. "Where the averments of the petition would, if proven, entitle the plaintiff to an injunction, a writ will not be refused merely because the acts sought to be enjoined are punishable under the criminal statutes of this state."

At page 441 the court says, per Donahue, J.:

"It is further contended that injunction is not the proper remedy to compel obedience to the penal laws of the state. That of course is true, but the fact that wrongful interference with another's property may constitute a penal offense is no reason for refusing a writ, if the plaintiff for other reasons is entitled to the same.

"The petition avers that the defendant has ever since the 16th day of March, 1916, continued to gather, purchase, traffic, and otherwise take possession of the bottles of the plaintiff; that he threatens to and will unless restrained by the court, continue to gather, purchase, traffic in and take possession of said bottles, and will sell and otherwise dispose of the same; that the plaintiff has suffered and will continue to suffer great and irreparable damages; that it has no adequate remedy at law; and that it will be put to a multiplicity of suits in order to recover its property unless defendant is restrained by the court." · · · ·· · ··

"It is clear that these averments are sufficient to authorize the court to grant a perpetual injunction if the allegations are sustained by proof."

In the celebrated case of **In Re Debs, 158 U. S. 564,** Justice Brewer, speaking for the entire court, said at page 593:

"There must be some interferences, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of equity arises and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

In an opinion written February 20, 1931, **Goodman v Western Bank & Trust Company, 28 N. P. (N.S.) 272,** this court held that the unlawful practice of law by a corporation would be enjoined notwithstanding such acts were punishable by fine. Such opinion has been cited with approval in the recent case of **Water Service Co. v Newman et, 31 N. P. (N.S.) 75, at page 100.**

Similar action was subsequently taken by the Court of Appeals for Cuyahoga County in **Dworken v Apartment Owners Association, 34 O. L. R. 234, 38 Oh Ap 265,** in which case the court entered a decree enjoining defendant corporation from maintaining a legal department and carrying on the practice of law. A motion to certify the record in such case was overruled by the Supreme Court.

In **U. S. v Gilbert, 58 Fed. (2d) 1031,** the court enjoined defendant from acting as a guide without license at Gettysburg National Cemetery Park notwithstanding the statutes of the United States punish such act. The court said, per Johnson, D. J., at page 1032:

"In his answer, defendant avers that there is a plain, adequate, and complete remedy at law, and that a court of equity has no power to grant the relief prayed for. The only available legal remedy is the imposition of a fine collectible by a suit at law before a justice of the peace; as provided by §7 of the act

of February 11, 1895 (28 Stat. 651), which is wholly inadequate and will only result in a multiplicity of suits. Robbins v United States, (C. C. A.) 284 F. 39."

In U. S. v American Bonding & Mortgage Co., 31 Fed. (2d) 448, the statutes of the United States provided punishment for radio broadcasting without a federal license. Notwithstanding this the court issued an injunction against defendant engaging in the business of radio broadcasting without a license. At page 458 the court said, per Wilkerson, D. J.:

"The interference complained of amounts to a public nuisance and is within the jurisdiction of equity because irreparable damage to individuals and **the great public injuries which are likely to ensue.** That the acts of the defendant may be violations of the criminal law also does not destroy the jurisdiction of equity."

In view of the fact that the business of milk marketing is one charged with the "public interest", and in view of the allegations contained in the petition hereinbefore set forth, and upon the clear rule expressed in the decisions hereinbefore referred to, it follows that the demurrer to the petition should be overruled. An entry to that effect accordingly will be made.