**MANTLE RANCHES, INC., a Colorado corporation, Plaintiff,**

**v.**

**UNITED STATES PARK SERVICE, an agency of the United States Department of the Interior; Bruce Babbitt, Secretary of the United States Department of the Interior; Roger Kennedy, National Park Service Director; Robert M. Baker, Rocky Mountain Regional Director, National Park Service; Dennis Huffman, Superintendent, Dinosaur National Monument; Defendants.**

**UNITED STATES PARK SERVICE, Bruce Babbitt, Roger Kennedy, Robert M. Baker, Dennis Huffman, Counter–Claimants,**

**v.**

**MANTLE RANCHES, INC., Counter–Defendant.**

**Civil Action No. 95–K–531.**

United States District Court, D. Colorado.

Nov. 18, 1996.

Stanley F. Johnson, Boulder, CO, Thomas Morris, Vranesh & Raisch, L.L.C., Boulder, CO, Karen Budd–Falen, Budd–Falen Law Offices, P.C., Cheyenne, WY, for Plaintiff/Counter-defendant.

Michael E. Hegarty, Assistant U.S. Attorney, Denver, CO, Thomas R. Graf, Regional Solicitor's Office, U.S. Department of Interior, Lakewood, CO, for Defendants/Counterclaimants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Mantle Ranches Inc. (Mantle) sues National Park Service, specifically the Dinosaur National Monument ("DNM"), Secretary of the Interior Bruce Babbitt, National Park Service Director Roger Kennedy, National

Park Service Regional Director, Rocky Mountain Region Robert M. Baker, and Dennis Huffman, DNM superintendent.

The case arises because ranches owned by Mantle Ranches, Inc. are located within the boundaries of the DNM. The Second Amended Complaint describes disputes which have arisen concerning the alleged trespass by cattle owned by Mantle ranches on DNM land; access to the Mantle ranches; the DNM boundary fence; and snowmobile use.

The complaint asserts causes of action for (1) denial of due process; (2) temporary taking; and (3) violation of the Administrative Procedures Act and seeks relief in the form of the return of an administrative fine of $462.00, damages not exceeding $10,000.00 and a declaratory judgment or permanent injunction against Defendants.

Defendants counterclaim against Mantle for damages due to trespass on DNM land and seek a permanent injunction enjoining Mantle and its agents/representatives from unauthorized entry, use, excavation and/or alteration of DNM lands and resources.

Jurisdiction is based on 28 U.S.C. §§ 1331, 1346, 2201 and 2202, 5 U.S.C. §§ 551 et seq. and 5 U.S.C. §§ 701 et seq. Jurisdiction over the counterclaim exists under 28 U.S.C. § 1345.

On August 5, 1996, Defendant United States Department of the Interior, National Park Service ("NPS"), filed a motion for temporary restraining order. On August 8, 1996, I approved a Joint Stipulated Temporary Restraining Order ("TRO") to remain in effect until further order. Under the TRO, Mantle agreed not to discard or dispose of refuse on DNM lands; to grant vehicular access to its property under certain conditions; not to take any "on the ground action" with regard to spring water or other water development on NPS land; to comply with the 1996 NPS grazing permit; not to take any "on the ground" action with regard to the improvement of any roads located on

NPS land; and not to engage in any off-road motorized vehicle use on NPS lands.

On August 30, 1996, NPS filed a Memorandum in Support of Preliminary Injunction, incorporating its Memorandum in Support of Motion for Temporary Restraining Order. Plaintiff's Response to Defendants' motion for Preliminary Injunction was filed on September 19, 1996.

A preliminary injunction hearing took place on October 4, 8 and 9, 1996. A Stipulated Scheduling and Discovery Order was entered on October 4, 1996.[1]

On October 11, 1996, accompanied by representatives of and counsel for the parties, I visited the DNM and Mantle ranches to obtain a better understanding of the issues.

Oral argument on the preliminary injunction was held today, November 18, 1996 at 10:00 a.m.

*Preliminary Injunction.*

NPS seeks an injunction "with the following elements:"

(1) Cessation of all illegal dumping, and permission for NPS personnel to cross Mantle property in order to assess the contents of an illegal dump and the impact its existence is having on the environment, and to engage in such remedial activity as is necessary to protect the environment;

(2) Prohibition of plaintiff from trespassing on DNM land and diverting water resources;

(3) Direction that plaintiff comply with its grazing permits and cease from overgrazing certain Monument lands;

(4) Prohibition of plaintiff from tearing up Monument lands for purposes of constructing or improving roads; and

(5) Prohibition of illegal off-road motorized vehicle use.

(Memo.Supp.Prelim.Inj. at 2.)

Authority to issue a preliminary injunction exists under Federal Rule of Civil Procedure 65.

---

1. The Stipulated Scheduling and Discovery Order reflects: "The parties believe that the possibility of settlement of all issues is fair, and of less than all issues is good. At this point a settlement conference date has not been set by a magistrate judge." (Stip.Sched. & Discovery Order at 9.) No magistrate judge has been assigned to this case for any purpose. By separate order I therefore appoint Magistrate Judge Schlatter for the purpose of conducting a settlement conference.

■ A preliminary injunction is an extraordinary remedy providing the potential for considerable harm. Because its emergency nature does not afford the court the usual degree of careful consideration afforded by the deliberative processes of a trial, the issuance of such an injunction is one which is at best used sparingly, if at all. The purpose of an injunction is to preserve the *status quo ante*, the last existing state of peaceable, noncontested conditions which preceded the pending controversy.

A party seeking injunctive relief must establish:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

### A. Illegal Dumping.

NPS asserts Mantle has caused irreparable harm to DNM resources by dumping household and ranch refuse, equipment waste and other garbage and waste materials on park lands without a permit or approval from NPS.

In particular, NPS refers to a dump on the riverbank of the Yampa River adjacent to the Mantle's Castle Park property. The Yampa River is considered "critical habitat for recovery of four species of endemic Colorado River Basin fishes that are formally listed as endangered under the Endangered Species Act." (Memo.Supp.Mot. TRO, Aff. Huffman ¶ 17.)

NPS claims a substantial likelihood of success on the merits of its counterclaim in that the illegal dumping is in violation of The National Park Service Organic Act, 16 U.S.C. § 1, 3 and the relevant regulations in 36 C.F.R. Chapter 1, prohibiting the operation of an unpermitted waste dump in a national park unit.

In response Mantle claims Defendant has not given a legal description of the location of the alleged dumps, offered any proof that Mantle is engaging in "illegal dumping activities," offered any evidence that access is needed across the Mantle property to access these sites. Mantle argues this lack of information makes it impossible for it to respond to the charge and for the court to determine whether NPS is likely to succeed on the merits of its claims or that the rights of the NPS outweigh Mantle's property rights. Mantle denies engaging in any illegal dumping on NPS lands and says there is no reason for NPS to require access across private land to access NPS property because NPS lands completely surround the Mantle property.

Mantle further argues, even if such dumping is occurring, NPS has specific administrative regulations dealing with this concern, none of which has been followed in this case, i.e. the NPS has failed to exhaust its administrative remedies. Because there has been no final agency decision or any decision on this subject, Mantle claims judicial intervention is inappropriate.

Mantle states NPS' motion for TRO alleges Mantle has violated 36 C.F.R. §§ 2.14 and 6.12 regarding sanitation and refuse and waste disposal cites respectively. However, Mantle argues, under NPS regulations a permit is required for any individual who wishes to dispose of "solid waste" on NPS land except the regulations do not govern disposal of residential or agricultural solid wastes in a site by a person who can show he or she:

> (i) Resides within the boundaries of the unit;
>
> (ii) Generates the residential or agricultural waste within the boundaries of the unit;
>
> (iii) Disposes of the solid waste only on lands that the person owns or leases within the unit;
>
> (iv) Does not engage in a solid waste disposal practice that poses a reasonable probability of adverse effects on health or the environment ...
>
> (v) Is not required to possess a state or local permit or license for the disposal of solid waste.

36 C.F.R. § 6.2(c)(1) (1995).

Thus, Mantle argues, even if it knew the location of the complained of dump, NPS has

not made a showing that Mantle does not fall within one of the cited exceptions where a permit is not required for the dumping of solid waste.

Finally, Mantle argues, even if the regulations apply, NPS has not followed its regulations to cure the concern. Mantle cites 36 C.F.R. § 6.12(b) which states that a person who violates paragraph (a) of the section, operating a solid waste disposal without a permit, is subject to "[t]he penalty provisions of 36 C.F.R. § 1.3." 36 C.F.R. § 6.12(b). The regulations in 36 C.F.R. § 1.3 state "[a] person convicted of violating a provision of the regulations ... shall be punished by a fine or ... imprisonment." 36 C.F.R. § 1.3(a). This regulation also applies to violation of 36 C.F.R. § 2.14 relating to sanitation and refuse.

Mantle states it has never received a "ticket" or "violation notice" and has not been adjudicated "guilty" by a federal magistrate or judge for illegal dumping activities, i.e. that NPS has not followed its own regulations, and has denied Mantle due process.

 The parties are engaged in a logomachy of doubtful use. I observed adjacent to the curtilage, a shelf of land protected by an overhang that has been used historically by the ranch owners to store hay. Used as such, it could not fairly be described as a dump. In recent years, however, the location has been used to store snowmobile chassis, tires and other objects of doubtful use or value. Under present conditions the term "dump" is not unnecessarily opprobrious. From the testimony, I find Mantle thought this storage space was on its property and thus there was no intent to trespass. Even so, the presence of the snowmobile chassis, parts and other items on this land is contrary to historic use, constitutes a dump and must be corrected by removal of the offending objects.[2]

Moreover, absent injunctive relief, the dump will cause irreparable harm to the environment. The balance of hardships lies in the interests of every citizen to maintain the country's natural resources and the public interest will be served by enjoining Mantle from dumping at this location.

I order cessation of all illegal dumping at the riverbank site. It may be used in accordance with historic practice only for the storage of hay. However, I deny NPS' request for permission for NPS personnel to cross Mantle property in order to assess the dump and to engage in such necessary remedial activity. There is not that much there to require such measures. Instead, Mantle shall remove all debris identified from the site within thirty days of this order and shall file a report in this regard within forty-five days certifying such removal has occurred.

B. *Illegal Water Development.*

NPS asserts Mantle is linked to illegal water development activities on park lands that have caused irreparable harm to riparian areas and sensitive native plants and ani-

---

2. With regard to Mantle's assertion that NPS has not followed the federal regulations with regard to imposing a penalty on Mantle for the alleged dumping, NPS is not precluded from seeking injunctive relief because regulations exist governing the imposition of penalties on individuals for violation of the regulations.

The federal regulations which Mantle argues mandate that NPS follow an administrative procedure for imposing penalties on Mantle, rather than seek injunctive relief, are promulgated under the National Park Service Organic Act, 16 U.S.C. §§ 1 and 3. Under the Act, the NPS is created

to promote and regulate the use of the Federal Areas known as national parks [and] monuments ... by such means and measures as conform to the fundamental purpose of the said parks [and] monuments ... which purpose is to conserve the scenery and the natural

and historic objects and the wildlife therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1.

Here, NPS has counterclaimed for trespass, rather than for the imposition of penalties on Mantle for violation of federal regulations. NPS has the power to sue for trespass and to seek necessary injunctive relief in pursuit of the objectives for which it was created under the Act. *See Robbins v. United States*, 284 F. 39 (Cir.Ct.Colo. 1922) (United States was entitled to an injunction restraining a person from transporting passengers for hire in the Rocky Mountain National Park without permission from the Director of the Service in violation of regulations promulgated by the Department of the Interior).

mals. In particular, NPS refers to a spring box and 1600 feet of irrigation pipe buried on DNM lands. NPS asserts the pipe led from the newly installed spring box at a natural spring on NPS land to Mantle's Red Rock Ranch Property, thus diverting the spring water from its natural course onto the Mantle property and dewatering a desert natural spring area.

NPS maintains it is likely to succeed on the merits because Mantle's illegal water development activities are in violation of The National Park Service Organic Act, 16 U.S.C. §§ 1 and 3, and the regulations in 36 C.F.R. Chapter 1, specifically the prohibitions against trespassing, tampering and vandalism contained in 36 C.F.R. § 2.31. Mantle, it argues, has no right to develop water resources harmed by illegal water development activities and, even if it did, would require a Special Use Permit from the NPS before engaging in any ground disturbing activities on park lands.

In response, Mantle states NPS has failed to state where such illegal water development is taking place, the methods used to conduct such illegal activities, or what facts support the allegation that Mantle is attempting to develop other water resources on NPS lands. This precludes the court, it maintains, from assessing whether the NPS has met the requirement for obtaining a preliminary injunction.

Mantle also cites 36 C.F.R. § 7.63 specifically dealing with DNM and preserving the grazing privileges of the privately owned lands located outside the Monument. It maintains as part of the grazing operation, Mantle has adjudicated water rights located on NPS lands which are subject to regulation only by State law. Mantle asserts, while NPS may have the authority to govern ground disturbance on its property, it cannot take private property in violation of the Fifth Amendment of the United States Constitution.

With regard to the spring box which NPS destroyed, Mantle states NPS failed to give it notice of its action and to follow its own regulations regarding alleged illegal activities. Mantle states the remedy for the alleged violations of 36 C.F.R. § 2.31 are gov-

erned by 36 C.F.R. § 1.3. Further, Mantle states, there is a question as to whether the spring box is located on NPS lands and an administrative appeal is pending regarding the results of a 1995 cadastral survey indicating that the spring box is located on NPS lands.

■ I find NPS has not shown its likelihood of success on the merits of its counterclaim that Mantle has trespassed on DNM, engaged in illegal water development, and diverted water resources. To the contrary, the evidence and inspection of the area, in particular of the site in the vicinity of the removed spring box, reveals Mantle's historic access to the water sources in controversy. Without such historic right of access, the preservation in the Code of Federal Regulations of grazing privileges predating the establishment of DNM would be meaningless. *See* 13 C.F.R. § 7.63(b).

I find NPS unlawfully removed the spring box and pipes leading from it. The government's actions, unless remedied, will cause Mantle irreparable harm and effectively nullify its historic grazing rights as preserved by federal regulation. The balance of hardship favors Mantle and the public interest lies in preserving such historic rights.

I therefore order NPS to restore the spring box and pipes to their former condition at its own expense. Because restoration is not possible or extremely difficult to undertake during the winter months, I direct Magistrate Judge Schlatter to determine when and under what conditions the restoration shall take place. Further, Mantle shall afford NPS reasonable access to its lands and facilities, as determined by the magistrate judge to achieve the restoration.

C. *Excessive Grazing.*

NPS asserts Mantle disregards grazing regulations and grazing permit restrictions and illegally grazes cattle and other livestock on park lands within DNM. NPS asserts this results in irreparable harm to DNM resources and violates the Act of September 8, 1960 (74 Stat. 857, Pub.L. 86–729) and the regulations promulgated thereunder in 36

C.F.R. § 7.63 (1995) (relating specifically to DNM).

NPS acknowledges that Superintendent Huffman could begin the legal process of legally terminating or suspending Mantle's grazing privileges but has chosen not to do so in the hope of reaching an amicable solution. However, since no such solution has been achieved, NPS now seeks injunctive relief to force Mantle to comply with its grazing permits and the relevant laws and regulations. In this regard, it cites *United States v. Hunter*, 236 F.Supp. 178 (S.D.Cal. 1964), *aff'd on relevant grounds*, 388 F.2d 148 (9th Cir.1967) holding that unauthorized pasturing of cattle on lands within national monument is a tort and trespass, being wilful and continuous, and constitutes an injury for which an injunction may be granted.

The injunction sought here is to direct that Mantle comply with its grazing permits and cease from overgrazing certain monument lands. To obtain such relief, NPS must be able to show a substantial likelihood of success on the trespass claim contained in its counterclaim.

Whether there is overgrazing as alleged and the effect of such overgrazing at Laddie Park when mixed with the damage caused by the use of campsites there preclude an assessment of the likelihood of NPS' success on the merits regarding trespass due to overgrazing. I therefore deny the motion for preliminary injunction in this regard.

D. *Illegal Road Development and Offroad Vehicles Use.*

NPS contends Mantle is engaged in and has threatened illegal road developments on DNM land and has engaged in illegal off road vehicle use in violation of 36 C.F.R. § 2.31 which prohibits trespassing on park lands and 36 C.F.R. § 4.10 which prohibits use of motor vehicles off designated park roads.

Mantle responds it has historic access rights to its property and that NPS has closed some of Mantle's access routes. Mantle maintains it will agree to apply for necessary permits to access its property via a route over which it does not have historic access, but that it needs no permit to access its property where NPS has eliminated its use of historic access.

With regard to the alleged off road vehicle use, Mantle maintains NPS has offered no data or proof of resource damage, has failed to follow its regulations with regard to correcting alleged violations, and has not shown its likelihood of success on the merits on this claim because no such violation has occurred.

The injunction sought here is to prohibit Mantle from tearing up Monument lands for purposes of constructing or improving roads and to prohibit illegal off-road motorized vehicle use. The evidence received to date does not establish that there has been violation of the regulations as alleged. Thus, I cannot find there is a likelihood of NPS' success on the merits with regard to this aspect of its counterclaim.

■ With regard to Mantle's access to "Joe's Grave," however, I find the Mantle family has had historic access which NPS has eliminated. Mantle has an easement of necessity. The balance of hardships and public interest mandate that NPS be required to provide this access to Mantle.

### Conclusion.

I conclude NPS is not precluded from seeking injunctive relief because it has not followed the procedures set out in the federal regulations for imposing penalties for the alleged violation of the relevant federal regulations by Mantle.

I find the evidence adduced thus far precludes an assessment at this time as to whether NPS can show the likelihood of its succeeding on the merits of its counterclaim or that it will suffer irreparable harm absent the issuance of an injunction on all issues other than the issue of the illegal dump on the banks of the Yampa River.

I therefore enjoin Mantle from all illegal dumping at the riverbank site. I order Mantle to remove all debris, snowmobile parts and chassis, tires and other items from the dump within thirty days of this order and to file a report in this regard within forty-five days of this date.

I further order NPS to restore the spring box and pipes which it removed to their former condition at its own expense in accordance with the time limits, methods and conditions determined appropriate by the magistrate judge.

Finally, I order NPS to restore to Mantle its historic right of access to "Joe's Grave."